# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| BRITTANY G.,[1] | ) | Civil Action No. 2:23-06168-JDA-MGB |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN,[2] | ) | **REPORT AND RECOMMENDATION** |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
|     Defendant. | ) | |

Plaintiff Brittany G. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration (the "Administration") regarding her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

This case comes before the Court following a continuing disability review ("CDR") by the Commissioner. Plaintiff was initially found disabled in a decision dated July 9, 2010, due to

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Carolyn W. Colvin was designated the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

borderline personality disorder and anxiety, beginning on December 18, 2009. (R. at 85, 86, 89.) Plaintiff was 19 years old on her disability onset date. (R. at 85, 86, 88.)

Following this determination, the Administration conducted a periodic review of Plaintiff's medical impairments pursuant to 20 C.F.R. § 404.1594 to determine whether she was entitled to continuing disability benefits. (R. at 88–131.) As of January 1, 2021, the Administration determined that Plaintiff's health had improved, and she was no longer disabled. (R. at 132, 133.) Consequently, Plaintiff's benefits were discontinued on March 31, 2021. (R. at 132, 133, 148, 149.)

The Administration's continuing disability review determination was upheld upon reconsideration. (R. at 148–49.) Plaintiff then requested a hearing before the assigned Administrative Law Judge ("ALJ"), which occurred by telephone on February 7, 2023. (R. at 43–84, 188.) The ALJ issued a decision dated March 31, 2023, confirming that Plaintiff was no longer disabled as of January 1, 2021. (R. at 16–42.) The Appeals Council denied Plaintiff's request for review, (R. at 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is no longer entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The most recent favorable medical decision finding that the claimant was disabled is the determination dated July 9, 2010. This is known as the "comparison point decision" or CPD.

(2) At the time of the CPD, the claimant had the following medically determinable impairments: depressive, bipolar, and related disorders; anxiety disorder; borderline personality disorder; attention deficit hyperactivity disorder; spinal disorder, status post remote surgery; and headaches. The bipolar disorder and borderline personality disorder were found to result in the residual functional capacity that the claimant would not be able to sustain even simple, unskilled work due to a marked limitation

2

with difficulties in maintaining social functioning; and one or two episodes of decompensation, each of an extended duration.

(3) Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

(4) The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through the date of this decision. Thus, the claimant has continued to have the same impairments that she had at the time of the CPD.

(5) Since January 1, 2021, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(6) Medical improvement occurred on January 1, 2021 (20 CFR 404.1594(b)(1)).

(7) After careful consideration of the entire record, I find that, since January 1, 2021, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can perform only simple, uncomplicated tasks, but can maintain concentration, persistence, and pace on such tasks for at least 2 hours at a time and complete an 8-hour workday without special supervision. She should have no required interaction with the public. She can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can no more than frequently stoop, crouch, crawl, kneel, and climb stairs or ramps; and can no more than occasionally climb ladders, ropes, or scaffolds. She should have no required concentrated exposure to unprotected heights or dangerous machinery.

(8) The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CR 404.1594(c)(3)(ii)).

(9) Since January 1, 2021, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

(10) The claimant has no past relevant work (20 CFR 404.1565).

(11) On January 1, 2021, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

(12) The claimant has at least a high school education (20 CFR 404.1564).

(13) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

(14) Since January 1, 2021, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

(15) The claimant's disability ended on January 1, 2021, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(R. at 21–32.)

## APPLICABLE LAW

### I.  Relevant Statutory Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment

---

[3] "[T]he definition of disability is the same under both DIB and SSI...." *Morgan v. Saul*, 9:19-CV-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

4

which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to her past relevant work, the burden shifts to the Commissioner to show that the claimant—considering her age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

II.     **Medical Improvement Standard**

If a claimant is found to be disabled, the Act then requires periodic review to determine whether continuing benefits are warranted. 20 C.F.R. § 404.1594(a). The Commissioner may terminate a claimant's benefits if substantial evidence demonstrates that the physical or mental impairment for which such benefits were initially provided has ceased, does not exist, or is no longer disabling. 42 U.S.C. § 423(f). While this determination depends on a number of factors, the key issue is whether the claimant has realized a level of medical improvement that now enables him or her to work. The Act defines "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).

To facilitate this periodic review, the Act provides the following eight-step evaluation:

5

 (1)  Is the claimant engaging in substantial gainful activity? If so, the disability has ended.

 (2)  If not, does the claimant have an impairment, or combination of impairments, that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the disability continues.

 (3)  If not, has there been any medical improvement in the claimant's impairment? If so, proceed to step 4. If not, proceed to step 5.

 (4)  Does such improvement relate to the claimant's ability to work, *i.e.*, has there been an increase in the claimant's residual functional capacity? If so, proceed to step 6. If not, proceed to step 5.

 (5)  If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, do any of the exceptions to medical improvement apply? *See* 404 C.F.R. § 404.1594(d), (e). If none of the exceptions apply, the disability continues. If an exception from the first group of exceptions to medical improvement applies, proceed to step 6. If an exception from the second group applies, the disability has ended.

 (6)  Is the claimant's current combination of impairments severe? If not, the disability has ended.

 (7)  If so, does the claimant's residual functional capacity permit performance of past work? If so, the disability has ended.

 (8)  If not, does the claimant have the ability—considering his or her age, education, and work experience—to perform other work? If so, the disability has ended. If not, the disability continues.

20 C.F.R § 404.1594(f)(1)–(8); 20 C.F.R. § 416.994(b)(5); *see also Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) (describing the eight-step process).

### III. Standard of Review

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff contends that the ALJ committed reversible error by: (1) improperly finding that Plaintiff's mental impairments did not meet or medically equal a listed impairment, and (2) giving

improper weight to the vocational expert's testimony. (*See generally* Dkt. No. 9.) In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error. (*See generally* Dkt. No. 12.) For the reasons set forth below, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.     The ALJ's Decision[4]

The ALJ's decision considers whether Plaintiff's depressive, bipolar and related disorders, anxiety disorder, borderline personality disorder, attention deficit hyperactivity disorder, spinal disorder (status post remote surgery), and headaches continued to render her disabled from January 1, 2021, the date of Plaintiff's most recent disability review, through April 5, 2023, the date of the ALJ's decision. (R. at 19–32.) Employing the eight-step evaluation process described above, the ALJ first identified the most recent favorable medical decision finding that Plaintiff was disabled, which was July 9, 2010—also known as the "comparison point decision" or "CPD." (R. at 21.) The ALJ then confirmed that since the CPD, Plaintiff had not engaged in substantial gainful activity and had not developed any additional impairments. (R. at 21.) The ALJ found that the severity of Plaintiff's established impairments did not meet any relevant listings criteria. (R. at 21–23.)

In so determining, the ALJ explained that the severity of Plaintiff's impairments, considered singly and in combination, did not meet or medically equal the criteria of any listings included in Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.08 (Personality and impulse-control disorders) or 12.11 (Neurodevelopmental disorders) because Plaintiff's mental impairments did not result in an

---

[4] Plaintiff makes no allegations of error regarding the ALJ's consideration of her physical impairments. (*See generally* Dkt. No. 9.) Accordingly, the undersigned's discussion of the ALJ's decision focuses on Plaintiff's mental impairments.

8

extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning known as the "paragraph B" criteria. (R. at 22.) The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information. (R. at 22.) To justify this conclusion, the ALJ explained:

> Treatment notes do not document any unusual issues with the claimant's ability to understand, remember, or apply information. In the claimant's Function Report, she reported being forgetful, but reported that she does not need any special reminders to take care of personal needs and grooming, and does not need help or reminders taking medicines (Exhibit 9E). The claimant had no difficulty in participation in the hearing. She was able to understand the proceedings at the hearing. The claimant was able to remember and provide detailed information in areas including her education history, work history, and medical history. I recognize the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning on a day-to-day basis. The claimant's participation during the hearing is not intended to necessarily reflect her typical level of functioning; however, during periods of escalated mental symptoms, the claimant may experience some difficulty. I therefore find the claimant is limited to simple, uncomplicated tasks.

(R. at 22.) The ALJ also found that Plaintiff had a moderate limitation in interacting with others, noting:

> Throughout the record, the claimant has demonstrated the ability to get along with her treating providers. The medical evidence and the claimant's testimony indicate she has reported difficulty at times interacting with others. The claimant was able to interact appropriately with [] Dr. Taylor, the consultative examiner. At this examination, she also reported transporting [herself] to doctor's appointments, shopping, and running errands, which would bring her in contact with other people. (Exhibit 10F). In the claimant's Function Report, she reported her dog helps with her anxiety. She reported when going out, she can go out alone and does not need someone to accompany her. She reported she goes to church, checks on her grandmother on a regular basis, and sometimes goes to a movie or exchanges texts with others. She also reported shopping in stores for groceries, personal care [items], and/or clothes once every two weeks, with each trip lasting 2 hours. The claimant indicated she has never been fired or laid off from a job because of problems getting along with other people (Exhibit 9E). I therefore find the claimant is limited to no required interaction with the public.

(R. at 22–23.)

The ALJ then determined that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. (R. at 23.) The ALJ explained:

> In the claimant's Function Report, she reported living alone with her minor child. She reported significant activities including dressing her son, making him breakfast and lunch, giving him a bath, meal preparation 4 days a week, feeding and walking her dog, with no help from anyone with caring for her son or her dog, taking 2 days to do laundry, doing dishes at least once a day, driving, shopping in stores, paying bills, counting change, handling a savings account, and using a checkbook/money orders (Exhibit 9E). In her Function Report, the claimant alleged being able to pay attention for five minutes, not finishing what she starts, being able to follow written instructions, and following spoken instructions not well (Exhibit 9E). I therefore again find the claimant is limited to simple, uncomplicated tasks.

(R. at 23.)

Finally, the ALJ determined that Plaintiff had only a mild limitation in adapting or managing herself. (R. at 23.) As support for this limitation, the ALJ described:

> In the claimant's Function Report, she reported no problem with personal care, but indicated some days she is too sad to worry about eating or taking a shower (Exhibit 9E). The medical records have not shown any significant difficulty with the claimant maintaining her hygiene and attire. In the claimant's Function Report, she reported she does not handle stress well and becomes overwhelmed, and she sometimes handles changes in routine (Exhibit 9E). The medical records have not shown any significant issues with the claimant regulating her emotions.

(R. at 23.) Before moving on, the ALJ reiterated that the "paragraph B" criteria were not satisfied for any of the aforementioned listings because Plaintiff's mental impairments did not cause at least one "extreme" limitation or two "marked" limitations. (R. at 23.)

Turning to medical improvement, the ALJ determined that, "the medical evidence supports a finding that, by January 1, 2021, there had been a decrease in medical severity of the impairments." (R. at 24.) Before describing Plaintiff's impairments since January 1, 2021, the ALJ summarized Plaintiff's medical history before and during the CPD. (R. at 24.)

Specifically, the ALJ explained that Plaintiff was hospitalized in March 2008 due to escalated mental symptoms and telling the school nurse that she planned to commit suicide. (R. at

10

24.) During the hospitalization, staff worked with Plaintiff on her mood swings, suicidality, cutting, impulsiveness, self-esteem, and attention deficit disorder symptoms. Plaintiff was diagnosed with bipolar disorder, depressed type, suicidal attempt, and rule-out attention deficit disorder. (R. at 24, referencing R. at 548–50.)

The ALJ further explained that Plaintiff was hospitalized again in October 2009 due to escalated mental symptoms, including rapid mood swings and suicidal ideation. (R. at 24.) At that time, Plaintiff was diagnosed with bipolar disorder, attention deficit disorder, borderline personality traits, headaches, and back pain syndrome. (R. at 24, referencing R. at 524–26.) The ALJ described that Plaintiff was also hospitalized in May and June of 2010 due to an attempted overdose. (R. at 24, referencing R. at 557–59.) While at the hospital, Plaintiff reported that she had thoughts of jumping off a building and admitted to abusing alcohol. (R. at 24, referencing R. at 557.) Plaintiff was diagnosed with bipolar, depressed, suicidal ideas or plans attempt; alcohol abuse; and borderline personality disorder. (R. at 24, referencing R. at 557–59.)

The ALJ noted that, at the time of the CPD, the State agency psychological consultant determined that Plaintiff had a moderate limitation in completing activities of daily living, a moderate limitation in maintaining concentration, persistence or pace, a marked limitation in maintaining social functioning, and had one or two episodes of decompensation lasting for an extended duration. (R. at 24, referencing R. at 566–83.) The State agency psychological consultant further opined that Plaintiff would have difficulty sustaining appropriate job performance over the course of the typical work week, would be unreliable, miss numerous days of work, have difficulty interacting appropriately with coworkers, would require special supervision, and would have difficulty adapting to simple requests for change and making appropriate decisions. (R. at 24, referencing R. at 566–83.)

11

After noting that Plaintiff's mental impairments had improved since the CPD, the ALJ continued on to give a detailed account of Plaintiff's impairments since January 1, 2021. (R. at 24–28.) The ALJ first explained that the State agency psychological consultant's January 2021 evaluation found that Plaintiff: could perform simple, unskilled tasks for reasonable periods of time without special supervision, could attend work regularly, would perform best with limited contact with the general public, could adapt to requests for change, and could make simple, work-related decisions. (R. at 24–25, referencing R. at 88–131.) The ALJ mentioned that the State agency psychological consultant made similar findings during an October 2021 examination of Plaintiff, detailing that Plaintiff was capable of understanding both simple and detailed instructions, attending to and performing simple unskilled work for reasonable periods of time, interacting appropriately with coworkers and supervisors, responding appropriately to requests for change, and protecting herself from common workplace hazards. (R. at 25, referencing R. at 790–808.) The ALJ gave these opinions significant weight, noting that they are consistent with the medical evidence in the record, except to the extent they suggested limitations on Plaintiff's ability to adapt and manage. (R. at 25.)

The ALJ then explained that:

> [C]laimant's mental impairments since the cessation date of disability, . . . have been managed by her providers without the need for any psychiatric hospitalizations. While the claimant reported symptoms, mental exams have shown limited abnormal findings. The medical evidence shows the claimant has had a favorable response to treatment, which has consisted of medications and therapy, with a reduction but not a resolution of symptoms.

(R. at 25, referencing R. at 652–717, 735–65, 778–80, 815–18, 840–61, 876–1022, 1044–63.) As further support for this conclusion, the ALJ described that Plaintiff underwent a consultative examination in November 2020 with Cherilyn Y. Taylor, Ph.D., following which Dr. Taylor concluded that Plaintiff experienced no significant deficiency in terms of her ability to perform

12

activities of daily living, but that Plaintiff may experience difficulty with complex tasks during a typical workday and would be mildly to moderately limited in her social functioning at work. (R. at 26, referencing R. at 648–51.) The ALJ gave Dr. Taylor's conclusions significant weight. (R. at 26.)

Before moving on to Plaintiff's RFC determination, the ALJ explained that he gave limited weight to a letter provided by Georgeann Ramsey, LISW-CP, who evaluated Plaintiff during one in-person therapy session and four telehealth therapy sessions from February 2020 through January 2021. (R. at 26.) The ALJ described that the letter was given limited weight because it was "primarily based on the claimant's reported symptoms, and does not include any actual clinical findings or any conclusions about the claimant's ability to perform work activities." (R. at 26, referencing R. at 734.) The ALJ also explained that he gave limited weight to the opinion of Reuban Benjamin Ridgeway, Ph.D., a clinical psychologist who treated Plaintiff throughout 2022. (R. at 26, referencing R. at 809–14, 859, 861.) Dr. Ridgeway opined that Plaintiff's mental health disorders interfere with her ability to sustain gainful employment; the ALJ determined this opinion was a generalization that did not actually convey specific work limitations. (R. at 27, referencing R. at 859, 861.)

The ALJ then continued on to determine that Plaintiff was able to perform a limited range of light work. (R. at 28.) In support of this conclusion, the ALJ recounted Plaintiff's hearing testimony and activities of daily living before finding that:

> The intensity and frequency of the claimant's limitations and symptoms reported in her testimony are not fully supported by or consistent with the greater weight of the overall evidence. While the claimant has made complaints at times to her treating providers, those complaints are less severe than those described in her testimony. Physical and mental exams do not fully corroborate the claimant's testimony. A review of the record shows that treatment for the claimant's conditions have been effective in reducing, but not eliminating all symptoms. . . . . In the claimant's Function Report, her report at the consultative examination, and in her testimony,

13

>   she has reported a significant range of activities including managing her own household and fully taking care of her minor child without any assistance, household chores, driving, and managing her finances (Exhibits 9E and 10F). . . .

(R. at 30.)

After noting that Plaintiff did not have past relevant work, the ALJ determined that Plaintiff was able to perform a significant number of jobs in the national economy since the date of the CPD. (R. at 31–32.) Specifically, the ALJ explained that:

>   The vocational expert testified that given all of the factors the individual would be able to perform the requirements of representative occupations such as marker (DOT# 209.587-034), that is light with an SVP of 2, . . . ; routing clerk (DOT# 222.687-022), that is light with an SVP of 2 . . . ; and router (DOT# 222.587-038) that is light with an SVP of 2."

(R. at 32.) Thus, the ALJ confirmed that Plaintiff's disability ended on January 1, 2021, and Plaintiff had not become disabled since that date. (R. at 32.)

>   II.   **ALJ's Consideration of Plaintiff's Medical Improvement**

As noted above, the Commissioner may not terminate ongoing benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. To establish medical improvement, a comparison must be made between the claimant's current condition and her condition at the time of the CPD. 20 C.F.R. § 404.1594(b)(7). The ALJ may not simply rely on the current medical evidence or summarize previous records; rather, "[a] determination that there has been medical improvement must be based on improvement in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." *Id.* § 404.1594(b)(1); *see also Daniel C. v. Berryhill*, No. 5:17-CV-00074, 2018 WL 7051034, at *8 (W.D. Va. Dec. 28, 2018) (noting that "a proper finding of medical improvement requires examination of reports and records generated before the CPD"), *adopted*, 2019 WL 237400 (W.D. Va. Jan. 16, 2019). In other words, "the Commissioner must

compare the specifics of a claimant's condition at the time of [her] disability with more recent findings, not just reevaluate whether the claimant is disabled based on his current condition." *Lemieux v. Saul*, No. 1:19-CV-00350-KDB, 2020 WL 5750866, at *4 (W.D.N.C. Sept. 25, 2020).

Here, the ALJ appropriately considered and compared Plaintiff's condition before the CPD with the more recent findings. As described in Section I above, the ALJ thoroughly recounted the medical and opinion evidence prior to the CPD, described the medical and opinion evidence following the cessation date of disability, and explained that Plaintiff's condition had medically improved, as it was managed through treatment. (R. at 23–28.) Specifically, the ALJ noted:

> [C]laimant's mental impairments since the cessation date of disability, . . . have been managed by her providers without the need for any psychiatric hospitalizations. While the claimant reported symptoms, mental exams have shown limited abnormal findings. The medical evidence shows the claimant has had a favorable response to treatment, which has consisted of medications and therapy, with a reduction but not a resolution of symptoms.

(R. at 25, referencing R. at 652–717, 735–65, 778–80, 815–18, 840–61, 876–1022, 1044–63.) Accordingly, the ALJ properly compared Plaintiff's current condition to her condition at the time of the CPD before finding that her condition had medically improved. 20 C.F.R. § 404.1594(b)(7).

Plaintiff's assertions to the contrary lack merit. (*See generally* Dkt. No. 9.) With respect to Plaintiff's argument that the ALJ improperly concluded that Plaintiff's mental impairments did not meet or medically equal a listed impairment, the ALJ sufficiently justified his conclusion that Plaintiff did not have one extreme limitation or two marked limitations in the four areas of mental functioning with substantial evidence—namely, Plaintiff's treatment records and Function Report. (*See supra* at 9–10.) Plaintiff points the Court to no record evidence that might suggest otherwise. (*See generally* Dkt. No. 9.) Regardless, it is not this Court's job to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F.3d at 589.

Though it is framed as a claim that the ALJ erred in relying on some unspecified portion of the vocational expert's testimony, Plaintiff's second argument is actually a general attack on the ALJ's conclusion that Plaintiff was capable of a limited range of light work. (Dkt. No. 9 at 4–6.) Indeed, Plaintiff does not specify any issues with the ALJ's reliance on the vocational expert's testimony and claims only that the ALJ's medical improvement analysis was "incorrect." (*Id.*) However, the undersigned finds Plaintiff's contentions unconvincing. Again, Plaintiff points the Court to no record evidence to suggest that the ALJ's medical improvement analysis was flawed. (*Id.*) Rather, Plaintiff conclusively asserts that the ALJ improperly weighed the evidence. (*Id.*) As noted, it is not this Court's job to reweigh the evidence, as Plaintiff seems to contend. *Craig*, 76 F.3d at 589; *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court").

Regardless, the record does not support Plaintiff's contentions that her condition did not medically improve such that she was capable of performing a limited range of light work. In the three years leading up to the CPD, Plaintiff was hospitalized for mental health treatment multiple times, and attempted suicide at least once. (R. at 524–265, 548–50, 557–59.) Since the CPD, Plaintiff has not required involuntary or emergency hospitalization for her mental impairments and has successfully cared for herself and her son entirely on her own. The record before the Court demonstrates that Plaintiff continues to suffer with her mental health, but that she has made significant progress in managing her mental impairments. In fact, recent progress notes from Dr. Ridgeway (the clinical psychologist who treated Plaintiff throughout 2022) indicate that Plaintiff denied suicidal ideations and self-injurious behavior, and that Dr. Ridgeway praised Plaintiff for reaching out to a friend when she had recently felt emotionally overwhelmed, "point[ing] out that the patient exhibited good judgment and positive self-care even as she was emotionally suffering."

(R. at 860–61.) Dr. Ridgeway's treatment notes also indicate that despite "continu[ing] to experience depression, [Plaintiff] reports maintaining appropriate focus on her son's wellbeing and describes being a nurturing and loving parent," and that her major depressive disorder had improved such that it was now "in the moderate range." (R. at 1016.) Based on this record, the undersigned finds that the ALJ's decision is supported by substantial and free from legal error. It should therefore be **AFFIRMED**.

## CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's decision is supported by substantial evidence and is free from legal error. The undersigned therefore **RECOMMENDS** that the decision should be **AFFIRMED**.

**IT IS SO RECOMMENDED**.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 21, 2025
Charleston, South Carolina

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).